No.20-230C
(Judge Horn)

---

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

BRANDON FUENTES,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS, AND CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:
Jahn C. Olson
Lieytenant Colonel, U.S. Marine Corps
Genreal Litigation Division
Office of the Judge Advocate General

VINCENT D. PHILLIPS, JR.
Senior Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
U.S. Department of Justice
Washington, D.C.  20044
Telephone: (202) 305-4591
Facsimile: (202) 514-8640
Email: Vincent.Phillips2@usdoj.gov

August 20, 2021

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS .........................................................................1

I.     Statutory and Regulatory Framework For Separation From Service
For Disabilities....................................................................................... 2

II.    Mr. Fuentes Is Medically Separated From The Marine Corps
For Left Knee Pain.................................................................................. 5

III.   Proceedings in This Court..................................................................... 6

IV.   The BCNR Considered Mr. Fuentes' Other Conditions On Remand And
Concludes That His Low Back Strain and TMJ Syndrome Conditions Are Not
Unfitting ...............................................................................................7

     A.    The BCNR Did Not Deem His Low Back Strain Unfitting .......................8

     B.    The BCNR Did Not Deem Mr. Fuentes' TMJ Syndrome To Be
Unfitting..................................................................................10

ARGUMENT .......................................................................................11

I.     Standards of Review ..........................................................................12

     A.    Motion to Dismiss for Failure to State A Claim Under RCFC 12(b)(6) ...12

     B.    Judgment Upon the Administrative Record Under RCFC 52.1 ..............13

II.    The Court Should Dismiss Mr. Fuentes' Complaint As Nonjusticiable Because it
Challenges The Secretary's Discretion to Determine The Fitness of a Service
Member ...............................................................................................14

III.   The Record Demonstrates That Mr. Fuentes' Medical Separation With Severance
Pay Was In Accordance With Applicable Law And Is Not Arbitrary Or
Capricious ........................................................................................ 15

i

A.      The Court Cannot Overrule The BCNR's Determination That Mr. Fuentes Was Not Unfit to Serve Due To His Low Back Strain And TMJ Syndrome Conditions .............................................................................. 17

B.      The BCNR's Remand Determination That No Condition Other Than His Left Knee Pain Rendered Mr. Fuentes Unfit For Duty Is Supported By The Administrative Record And Is In Accordance With Applicable Law ......18

IV.   Mr. Fuentes Has Failed To Show That The BCNR Was Unreasonable In Concluding That He Did Not Qualify For Medical Retirement Because His Other Two Conditions Were Not Unfitting, Separately or in Combination With His Left Knee Pain For Which He Was Found Unfit And Medically Separated ...............20

A.      Mr. Fuentes Failed To Demonstrate That The BCNR Did Not Evaluate His Low Back Strain Collectively To Determine If It Was Unfitting ......21

B.      The BCNR Did Not Err In Determining That His Low Back Strain Was Not Separately Unfitting .......................................................23

1.      The BCNR's Decision Is Not Unreasonable Simply Because Medical Evidence Could Be Interpreted To Support Different Conclusions ........................................................................23

2.      Mr. Fuentes' Is Incorrect In Claiming That The BCNR Did Not Consider The Entire Record ........................................................24

3.      Mr. Fuentes' Attempts to Cast Doubt On The February 8, 2019 Examination Report That Documented That He Had No Occupational Impairments Related To His Low Back Strain Are Without Support ....................................................................... 25

4.      Mr. Fuentes Has Failed To Demonstrate That The Properly Referred Policy Had Any Impact On The BCNR's Remand Decision ...................................................................................26

C.      The BCNR Did Not Err In Finding That Mr. Fuentes' TMJ Syndrome Was Not Separately Or Collectively Unfitting .........................................27

CONCLUSION .........................................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(s)**

*Adkins v. United States,*
    68 F.3d 1317 (Fed. Cir. 1995)..................................................................... 15, 17

*Allphin v. United States,*
    758 F.3d 1336 (Fed. Cir. 2014)..................................................................... 15

*Bannum, Inc. v. United States,*
    404 F.3d 1346 (Fed. Cir. 2005)..................................................................... 13

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)..................................................................................... 12

*Cooper v. United States,*
    203 Ct. Cl. 300 (1973) .............................................................................. 25, 29

*Doe v. United States,*
    132 F.3d 1430 (Fed. Cir. 1997)..................................................................... 13

*Dzialo v. United States,*
    5 Cl. Ct. 554 (1984) .......................................................................... 17, 18, 19, 23

*Fisher v. United States,*
    402 F.3d 1167 (Fed. Cir. 2005)............................................................ 13, 17, 23

*Florida Power & Light v. Lorion,*
    470 U.S. 729 (1985)..................................................................................... 13

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)..................................................................................... 12

*Heisig v. United States,*
    719 F.2d 1153 (Fed. Cir. 1983)........................................................ 14, 15, 17, 23

*Holley v. United States,*
    124 F.3d 1462 (Fed. Cir. 1997)..................................................................... 11

*Murphy v. United States,*
    993 F.2d 871 (Fed. Cir. 1993)................................................................ 12, 15

*Orloff v. Willoughby,*
    345 U.S. 83, (1953)..................................................................................... 14

*Rutherford v. United States*,
 573 F.3d 1224 (Ct. Cl. 1978) ........................................................ 24

*Sanders v. United States*,
 594 F.2d 804 (Ct. Cl. 1979) .................................................... 14, 25

*Sargisson v. United States*,
 913 F.2d 918 (Fed. Cir. 1990).......................................................... 14

*Scheuer v. Rhodes*,
 416 U.S. 232 (1974) ....................................................................... 12

*Tech Sys., Inc. v. United States*,
 50 Fed. Cl. 216 (2001) ................................................................... 13

## **STATUTES**

10 U.S.C. § 628(b) ............................................................................... 13

10 U.S.C. § 1201 ....................................................................... 2, 15, 16

10 U.S.C. §§ 1201-1221 ........................................................................ 2

10 U.S.C. § 1203 .............................................................................. 1, 2

10 U.S.C. § 1216a ................................................................................. 2

10 U.S.C. 1552(a) ............................................................................... 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BRANDON FUENTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-230C |
| | ) | (Judge Horn) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS, AND CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>**

Pursuant to Rules 12(b)(6) and 52.1 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court grant its motion to dismiss, or, alternatively, grant our cross-motion for judgment upon the administrative record, and also deny the motion for judgment upon the administrative record of plaintiff, Brandon Fuentes.

<u>INTRODUCTION</u>

This case involves a decision by the Board for Correction of Naval Records (BCNR), on remand from this Court, that there was no material error or injustice involved in the United States Marine Corps' decision to medically separate Mr. Fuentes from active-duty service. Mr. Fuentes was separated, under 10 U.S.C. § 1203, with severance pay, as a result of the Secretary of the Navy's determination that he was unfit to continue to perform the duties required for active-duty service in the United States Marine Corps due to his disabling knee condition.

The Court remanded the matter to the BCNR to allow the Board to address whether Mr. Fuentes "is entitled to correction of his naval records concerning his claim that the Navy failed to

properly consider whether his diagnosed low back strain and temporomandibular joint syndrome (TMJ) separately or collectively impaired his ability to perform his military duties." Sept. 16, 2020 Order (ECF No. 22).  On remand, the BCNR considered all record evidence, which included additional evidence provided by Mr. Fuentes, and concluded that neither his low back strain nor his TMJ syndrome, a condition that affects jaw movement, significantly interfered with his ability to perform his military duties, which meant that these conditions did not render him unfit for continued naval service.  The record supports the BCNR's conclusion that Mr. Fuentes's medical separation for only his disabling knee condition was correct, as he did not meet the criteria for placement on the disability retirement list as a result of his low back strain or TMJ syndrome, separately or collectively.

<u>STATEMENT OF FACTS</u>

I.      <u>Statutory and Regulatory Framework For Separation From Service For Disabilities</u>

A service member may be entitled to retirement benefits or medical severance pay if disabled while serving on active duty.  See 10 U.S.C. §§ 1201–1221.  The Secretary of each Military Department is authorized to place eligible members in disability retirement status upon a finding that the member was unable to perform military duties by reason of disability incurred while the member was on active duty.  10 U.S.C. § 1201.  If the member's disability is determined to be permanent and stable, the member shall be medically retired or separated, depending on the rating assigned to the disability under the Department of Veterans Affairs Schedule for Ratings Disabilities (VASRD).  *See id.; see also* AR2828-29.  Eligible members with a disability rated as 30 percent or greater, or those with a disability rated less than 30 percent but with 20 or more years of active-duty service, will be retired.  10 U.S.C. § 1201.

Eligible members with a disability rated less than 30 percent and without 20 years of active-duty service are separated with medical severance pay. 10 U.S.C. § 1203.  Under 10 U.S.C. § 1216a(b), "in making a determination of the rating of disability of a member of the armed force for purposes of this chapter, the Secretary concerned shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating."

In the Marine Corps, the evaluation and determination of member disability at the time of Mr. Fuentes' separation was governed by the Department of the Navy Disability Evaluation Manual, SECNAVINST 1850.4E ("DES Manual" or "Manual").  *See* AR2728-3028.  The Manual provides that the "sole standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." SECNAVINST 1850.4E ¶ 3301; AR2795.  Under this standard, "[e]ach case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." *Id.*  "Conditions that do not themselves render a service member unfit for military service will not be considered for determining the compensable disability rating unless those conditions contribute to the finding of unfitness."  SECNAVINST 1850.4E ¶ 3802g; AR2830.

"A case usually enters the Department of the Navy DES [Disability Evaluation System] when a Medical Evaluation Board (MEB) is dictated for the purpose of evaluating the diagnosis and treatment of a member who is unable to return to military duty because the member's condition most likely is permanent, and or any further period of temporary limited duty (TLD) is

unlikely to return the member to full duty."[1]  SECNAVINST 1850.4E ¶ 3102a; AR2782.

Generally, a member "will be referred for disability evaluation only by a medical board that has

found the member's fitness for continued naval service questionable by reason of physical or

mental impairment." SECNAVINST ¶ 3201a; AR2787.  If the MEB makes such findings, it shall

refer the case to the Physical Evaluation Board (PEB) for further evaluation. SECNAVINST ¶¶

3102c, 3201a; AR2782, 2787.

The PEB acts on behalf of the Secretary of the Navy in making fitness determinations

and to determine a service member's entitlement to benefits for duty-related conditions.

SECNAVINST ¶ 1004a; AR2755.  PEBs determine the fitness of Service members with medical

conditions to perform their military duties and, for members determined unfit because of duty-

related impairments conditions, their eligibility for benefits pursuant to chapter 61 of Title 10

United States Code.  SECNAVINST ¶ 3102c; AR2782.  Service members may appeal the

decision of the PEB.  *Id.*  The PEB process includes the informal physical evaluation board

(IPEB), formal physical evaluation board (FPEB) and appellate review of PEB results.  *Id.*  The

IPEB reviews the case file to make initial findings and recommendations without the Service

member present.  *Id.*  The Service member may accept the finding, rebut the finding, or request a

FPEB.  *Id.*  In accordance with section 1214 of Title 10 United States Code, Service members

who are found unfit are entitled to a formal hearing, an FPEB, to contest their IPEB findings.

*See* SECNAVINST ¶ 3102c; AR2782.  The Military Department will review the findings and

recommendations of the FPEB when requested by the Service member.  *See id.*  The Military

---

[1]      A MEB is comprised of physicians. It is convened to "evaluate and report on the
diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or
convalescence; estimate of the length of further disability; and medical recommendation for
disposition of such members." SECNAVINST 1850.4E, ¶ 2043; AR2773.

Department will also provide to the Service member a written response to an FPEB appeal that specifically addresses each issue presented in the appeal. *See id.*

II.    <u>Mr. Fuentes Is Medically Separated From The Marine Corps For Left Knee Pain</u>

Mr. Fuentes entered active duty in the Marine Corps on January 9, 2012, and served until he was honorably discharged on February 1, 2019. AR1041. He was medically separated with severance pay after being found unfit by the PEB for left knee pain. AR1041; AR2514-15. His separation for left knee pain followed a documented history of issues and treatment for this condition, including two periods of limited duty—first from December 9, 2016 to June 7, 2017, and then from June 8, 2017 until December 5, 2017. AR1043. During his second period of limited duty, in July 2017, Mr. Fuentes's case was referred to the PEB. The informal PEB found him unfit for continued service due to his left knee pain on January 3, 2018. AR1042.

Mr. Fuentes then requested a formal PEB hearing. After his request, however, he sought to have the case terminated because he wanted his low back strain and his TMJ syndrome to be evaluated for unfitness in addition to his left knee pain. AR1042. That request was denied, and the formal PEB proceeded to consider only the left knee pain diagnosis. *Id.*

Undeterred, Mr. Fuentes submitted a petition for relief to the director of the Secretary of the Navy Council of Review Boards (SECNAVCORB), asserting that his "unfitting injuries are wider in scope than what he was permitted to present to the Formal PEB for consideration." AR1042. He contended that the exclusion from consideration of his low back strain and TMJ syndrome resulted from the PEB's misapplication of the then-rescinded Properly Referred policy. *Id.*

The SECNAVCORB responded on June 26, 2018, explaining that, although the cancellation of the Properly Referred policy did not affect Mr. Fuentes's case, his case had

nevertheless be reviewed to determine if his additional conditions were separately or collectively unfitting.  AR1042.  Accordingly, the SECNAVCORB stated that it reviewed the case and determined that Plaintiff's low back strain and TMJ syndrome were not unfitting—separately or collectively.  *Id.*  The SECNAVCORB explained that, although Mr. Fuentes's request to have these other two conditions found unfitting was based solely on the Department of Veterans Affairs' (VA) assignment of disability ratings for his low back strain and TMJ syndrome, no evidence showed that either of these conditions impaired his ability to engage in appropriate military duties.  AR1042-43.

III.     Proceedings in This Court

Dissatisfied with the PEB's determination, Mr. Fuentes filed a claim in this Court on February 28, 2020.  *See* Compl. (ECF No. 1).  In his original complaint, he alleged that the PEB misapplied the "Properly Referred Policy" by not considering his low back strain and TMJ syndrome, and that its determination that those conditions were not unfitting (unlike his left knee pain), and that, therefore, he was not entitled to be medically retired, was arbitrary and capricious. *Id.* at 3.

Defendant requested, and the Court ordered, a remand to the BCNR so that it could consider and fully document whether Mr. Fuentes is "entitled to correction of his naval records concerning his claim that the Navy failed to properly consider whether his diagnosed low back strain and temporomandibular joint syndrome (TMJ) separately of collectively impaired his ability to perform his military duties."  Sept. 16, 2020 Order at 1 (ECF No. 22).  In its order, the Court directed the BCNR to consider any additional documents or evidence that Mr. Fuentes chose to submit for consideration.  *Id.*

IV.   The BCNR Considered Mr. Fuentes's Other Conditions on Remand and Concludes That
      His Low Back Strain and TMJ Syndrome Conditions are Not Unfitting

Mr. Fuentes submitted an application to the BCNR on remand, *see* AR971–1039,

including an additional "report of medical review" authored by Dr. Daniel P. Slawski, MD,

AR1029–32.  In this report, Dr. Slawski stated that he had "utilized" some of the documents

contained in the administrative record to conclude that Mr. Fuentes's low back strain should

have been found to be unfitting by the PEB.  AR1029.  Dr. Slawski acknowledged that an

evaluation of Mr. Fuentes's low back strain on August 25, 2017 by VA physician Dr. Sussman

"revealed no evidence of radicular pain or neurologic involvement[, and m]uscle strength was

normal as were reflexes and sensory examination."  AR1030.  Despite Dr. Sussman's findings,

however, Dr. Slawski concluded that Mr. Fuentes's assertions of discomfort and displays of pain

avoidance during that August 2017 evaluation suggested that he should have been deemed unfit

as a result of low back strain.  AR1030-31.  In explaining the basis for his conclusion, Dr.

Slawski discussed how the altered function of a person's knee could lead to increased forces

being "shunted" or applied to other parts of the anatomy, including the lower back.  AR1031.

And he noted that "[t]his related dysfunction was even alluded to by HCP Tina Cox at the

February 2017 evaluation in Hawaii."  AR1031.  From this limited information, Dr. Slawski

concluded that he believed Mr. Fuentes' low back strain was unfitting.

On remand, a three-member panel of the BCNR considered Mr. Fuentes's application on

April 29, 2021, and a final board decision was issued on May 3, 2021.  AR2514–18.  The BCNR

concluded that there was no evidence of the existence of probable material error or injustice in

Mr. Fuentes not being found unfitting because of his low back strain and TMJ syndrome.

AR2514.  In support of its conclusion that these other conditions were not unfitting, the BCNR

considered the entirety of the administrative record, including the new evidence submitted by

7

Mr. Fuentes.  *Id.*; *see also* AR1041-59.  A few items were of particular relevance to the Board in reaching its conclusion.  Among those were a medical examination of Mr. Fuentes conducted on February 8, 2019, which was one week after his discharge, and a December 2, 2020 advisory opinion provided by the CORB Medical Advisor that opined that the medical evidence did not support a finding the Mr. Fuentes was unfit for service for his low back strain or his TMJ syndrome.  AR2514-15.

     A.     The BCNR Did Not Deem His Low Back Strain Unfitting

Regarding Mr. Fuentes's low back strain, the February 8, 2019 medical examination was relevant to the BCNR because it documented no issues with his back strain one week after his discharge.  AR2515–16; AR1769–75.  Similarly, the advisory opinion, which chronicled the numerous and various medical encounters that Mr. Fuentes had during his active-duty service, noted that Mr. Fuentes had 88 medical and physical therapy encounters for his left knee pain from 2016 through 2018.  AR2516-17; AR1044–45.  In contrast, Mr. Fuentes had only nine encounters that appear to have had any relationship to his low back pain, but none of these encounters, which began in 2017, ever prompted any of the personnel who encountered Mr. Fuentes to refer him to a medical board or the PEB, as his symptoms were never deemed to warrant such a result.  AR2516; AR1045–46.  In particular, the advisory opinion noted that only two of these encounters for low back strain involved any clinical evaluation by a physician or licensed independent practitioner, but both of those encounters resulted in conservative treatment, such as applying warm heat and engaging in stretching and the use of Tylenol.  AR1046; AR1052.  There exist no records of physical limitations or duty restrictions due to Mr. Fuentes's low back strain.  AR1046.  Moreover, Mr. Fuentes did not receive any clinical care for back pain in the six months after he was separated from the Marine Corps.  AR1052.

Further, the advisory opinion addressed the report authored by Dr. Slawski, that Mr. Fuentes submitted on remand, and found that it did not support a finding of unfitness.  AR1049–51.  More specifically, Dr. Slawski relied on Mr. Fuentes's February 28, 2017 encounter with HCP Tina Cox, a physical therapist, to support his conclusion that Mr. Fuentes's back pain and his left knee pain were interrelated, but the BCNR's review revealed that the document relied upon was not a record of Mr. Fuentes's encounter with the physical therapist, but was another individual's record inadvertently included in Mr. Fuentes' file.  AR1049–50.

In sum, the BCNR considered the entire record and concluded that it did not support a finding that Mr. Fuentes was unfit due to his low back strain or TMJ syndrome.  AR2516–18.  Even acknowledging that Mr. Fuentes "received multiple treatments for [his] back condition throughout [his] active duty service" and despite the "conflicting medical opinions" in the record, the BCNR found that "the fact [that] none of [his] medical providers considered [his] symptoms serious enough to merit a referral to a medical board or the PEB [ ] was persuasive evidence to the Board that [his] symptoms did not cause serious enough occupational impairment to be considered unfitting for continued naval service."  AR2516.  "Most importantly, the Board felt that [his] 8 February 2019 medical examination for employment purposes was telling evidence of whether an occupational existed at the time of [his] discharge from the Marine Corps" as it was conducted one week after his discharge.  *Id.*  The BCNR concluded that, "despite evidence that [he] possessed defects in his spine, the Board did not find evidence that these defects were sufficiently symptomatic to cause an occupational impairment."  AR2516–17.  And regarding Mr. Fuentes's contention that his back condition should have been referred under the "combined effect" policy, the Board noted that, "in order to qualify for a referral under the

'combined effect' policy, there must be some evidence of an occupational impairment," but the record revealed no occupational impairment.  AR2517.

B.      The BCNR Did Not Deem Mr. Fuentes's TMJ Syndrome To Be Unfitting

Regarding Mr. Fuentes's TMJ syndrome, the February 8, 2019 medical examination similarly did not document any symptoms related to this issue.  AR2515.  The advisory opinion noted that, while Mr. Fuentes underwent dental examinations prior to his release from active duty, none of these visits resulted in any dental-related duty limitations.  AR1053–55; AR2515. Mr. Fuentes had no record of treatment for his TMJ syndrome condition between 2014 and 2017, which was the three-year period after his hospitalization for complications from his oral surgery to remove his wisdom teeth.  AR1053.  More specifically, none of the three dental examinations that Mr. Fuentes underwent on January 23, 2018, August 13, 2018, and November 8, 2018 reported any significant limitations that would impact his fitness for active duty, and no duty limitations were prescribed.  AR2517; AR1054–55.  The notes accompanying his January and November examinations made no significant findings, and rated him as Class 1, which means he was worldwide deployable.  *Id.*  And the notes accompanying his August 13, 2018 examination recommended only conservative management, to include passive stretching exercises and the use of Ibuprofen.  *Id.*  Finally, Dr. Slawski's opinion was considered on the TMJ syndrome issue as well, but his opinion was found to have been "theoretical, based on the projected trajectory of the Applicant's 2014 presentation . . . rather than empirical findings documented by dental corps officers.  AR2517; AR1055.

Similarly, the BCNR ultimately concluded that the "preponderance of the evidence does not support a finding that [Mr. Fuentes's] TMJ condition was separately unfitting."  AR2517. The Board found the January and November 2018 dental examinations "compelling as evidence

that [his] TMJ condition did not create an occupational impairment." *Id.* Neither of those examinations resulted in any duty limitations, nor did the February 8, 2019 medical examination he underwent one week after his separation document any symptoms for his TMJ syndrome. *Id.* Further, concerning Mr. Fuentes's assertion of "combined effect," the Board again found that the lack of any evidence of occupational impairment justified the Navy's decision not to refer his TMJ syndrome to a medical board or the PEB. *Id.*

Following the Board's decision on remand, this Court entered a scheduling order concerning briefing in this case. June 29, 2021 Order (ECF No. 40). In accordance with that scheduling order, Mr. Fuentes filed both an amended complaint and his motion for judgment on the administrative record on July 30, 2021. *See* Am. Compl. (ECF No. 45); Pl. MJAR (ECF No. 46). The United States, in accordance with the Court's scheduling order, now files it motion to dismiss and cross-motion for judgment and response to Plaintiff's motion for judgment on the administrative record.

<div align="center">ARGUMENT</div>

The Court should dismiss Mr. Fuentes's amended complaint for failing to state a claim under RCFC 12(b)(6) because it raises non-justiciable issues in challenging the merits of the Navy's determination that his low back strain and TMJ syndrome do not render him unfit to serve. In the alternative, the Court should grant judgment in favor of the United States because the record supports the BCNR's decision that these two conditions did not render him unfit for continued service in the United States Marine Corps, and the remand decision was in accordance with applicable law.

I.       Standards of Review

        A.       Motion to Dismiss for Failure to State A Claim Under RCFC 12(b)(6)

        When considering a RCFC 12(b)(6) motion to dismiss for failure to state a claim upon

which relief can be granted, the allegations in the complaint "should be construed favorably to

the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by*

*Harlow v. Fitzgerald*, 457 U.S. 800, 814–15 (1982).  Nevertheless, "a plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*,

550 U.S. 544, 555 (2007) (citations omitted).  The plaintiff's factual allegations "must be enough

to raise a right to relief above the speculative level, on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).  "The need at the

pleading stage for allegations plausibly suggesting (not merely consistent with) [an entitlement to

relief] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess

enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id*. at 557 (quoting Fed. R. Civ. P.

8(a)(2)).  If the plaintiff has "not nudged" his or her "claims across the line from conceivable to

plausible," then the "complaint must be dismissed." *Id*. at 570.

        Where a claim is nonjusticiable, the appropriate action is for a court to dismiss for failure

to state a claim upon which relief can be granted.  *See Murphy v. United States*, 993 F.2d 871,

872-73 (Fed. Cir. 1993).  "Justiciability is distinct from jurisdiction; it depends on 'whether the

duty asserted can be judicially identified and its breach judicially determined, and whether

protection for the right asserted can be judicially molded.'" *Id.* at 872.  "When the question is

one of physical or mental fitness for service in the military, courts are loath to interfere with

decisions made by the President and his designated agents." *Fisher v. United States*, 402 F.3d 1167, 1176-77 (Fed. Cir. 2005).

      B.     <u>Judgment Upon the Administrative Record Under RCFC 52.1</u>

      A motion for judgment upon the administrative record, pursuant to RCFC 52.1, is distinguishable from a motion for summary judgment. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005). Unlike a Rule 56 motion, "[p]roceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . ." *Id*. at 1356. "Thus, the central inquiry on a motion for summary judgment—whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment—has no bearing on a review of the administrative record . . . ." *Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001); *accord Bannum*, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

      Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing upon a review of the administrative record in a record review case. "The inquiry, instead, is whether, given all the disputed and undisputed facts, [the plaintiff] has met [his] burden of proof that the [agency's decision] was arbitrary, capricious, or contrary to law. *Tech Sys.*, 50 Fed. Cl. at 222. In reviewing an agency's action under this narrow, deferential standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (quotation omitted).

      Judicial review of an administrative discharge decision is limited. *Doe v. United States*, 132 F.3d 1430, 1433–34 (Fed. Cir. 1997). When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great

deference. *Id.* at 1434. The Court reviews the agency's decision to determine whether it was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure, which seriously prejudiced the plaintiff. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). This standard "does not require a re-weighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Id.* at 1157. To prevail, plaintiffs must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979) (citations omitted), *abrogated in part by* 10 U.S.C. § 628(b).

II.   **The Court Should Dismiss Mr. Fuentes's Complaint As Nonjusticiable Because it Challenges the Secretary's Discretion to Determine the Fitness of a Service Member**

The crux of Mr. Fuentes's case is his assertion that the BCNR erred in not reaching a conclusion that he should have been deemed unfit for service as a result of his low back strain and TMJ syndrome. *See* Pl. MJAR at 23 (arguing that the BCNR was unreasonable in concluding that his left knee pain is his only unfitting condition). This is a challenge to the merits of the BCNR's conclusion that he was not unfit as a result of these other two conditions, but such a challenge is beyond the judicial province.

"A controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Sargisson v. United States*, 913 F.2d 918, 921–22 (Fed. Cir. 1990) (quotation omitted). When the merits of a final military decision are challenged, the Court is obligated first to consider the justiciability of the legal question presented. *See, e.g.*, *Orloff v. Willoughby*, 345 U.S. 83, 93–94, (1953) ("[J]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly

settled rests upon the Congress and upon the President of the United States and his subordinates.").  The Federal Circuit has held that "determining who is fit or unfit to serve in the armed services is not a judicial province, and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence." *Heisig*, 719 F.2d at 1156 (holding that the merits of the military's decisions to release a service member from active duty are non-justiciable); *see also Allphin v. United States*, 758 F.3d 1336, 1341 (Fed. Cir. 2014) (Navy's discharge of servicemembers involved discretionary decisions the merits of which were nonjusticiable); *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) (same); *Murphy*, 993 F.2d at 874 ("[T]he merits of the Air Force's decision to release [the plaintiff] from active duty [as part of reduction-in-force efforts] are beyond judicial reach").

As explained more fully below, the BCNR's decision that Mr. Fuentes was not unfit for service due to his low back strain and TMJ syndrome was supported by the administrative record.  But Mr. Fuentes disagrees with the BCNR's conclusion that his other conditions are not unfitting, asking this Court to "direct the Navy to recognize that [his] spinal injury and jaw injury contribute to his unfitness, and thus increase his disability rating to at least 30%."  Pl. MJAR at 35.  The relief he requests thus demonstrates that his challenge is to the merits of his fitness to serve, which is beyond the reach of this Court.  Accordingly, Mr. Fuentes's case should be dismissed as his claim for a disability retirement is non-justiciable.

III.   The Record Demonstrates That Mr. Fuentes' Medical Separation With Severance Pay
       Was in Accordance With Applicable Law and is Not Arbitrary or Capricious

The Court should grant judgment on the administrative record to the United States because the BCNR's decision on remand that Mr. Fuentes is not unfit due to his low back strain and TMJ syndrome is supported by substantial evidence and is in accordance with law.

Mr. Fuentes disagrees with the BCNR's conclusion that his low back strain and TMJ syndrome do not warrant his inclusion on the disability retirement list. Pl. MJAR at 25–34. He therefore asks this Court to conclude, instead, that he be granted disability retirement under 10 U.S.C. § 1201. Pl. MJAR at 35–37. Mr. Fuentes has failed, however, to show, any deficiency in the BCNR's procedures in reaching its conclusion. Instead, Mr. Fuentes merely takes issue with the BCNR's weighing of all the record evidence rather than relying more heavily on the medical opinion he provided on remand, which he believes establishes that his low back strain and TMJ syndrome should also be deemed to render him unfit for continued service, and that all three conditions together entitle him to a medical retirement. But Mr. Fuentes's understandable desire to be medically retired, not medically separated, does not establish that the BCNR's determination that the totality of the record does not support finding him unfit for these other conditions was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

Indeed, the record is replete with evidence that Mr. Fuentes's low back strain and TMJ syndrome did not result in any occupational impairments for him during his active-duty service. Despite the absence of such evidence, however, Mr. Fuentes argues that these two conditions should have been deemed to render him unfit for service because they hypothetically *could* have rendered him unfit, according to the supplemental medical opinion he provided on remand. But Mr. Fuentes's mere desire for the BCNR to have reached a different conclusion does not establish that the Board's determination was arbitrary or capricious. Ultimately, the totality of the administrative record, which includes the conflicting medical evidence submitted by Mr. Fuentes on remand, does not establish that his low back strain and TMJ syndrome impaired him in any way. Accordingly, the BCNR's determination that these conditions, separately or in

combination with his left knee condition, were not unfitting was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

A.    The Court Cannot Overrule The BCNR'S Determination That Mr. Fuentes Was
      Not Unfit to Serve Due To His Low Back Strain And TMJ Syndrome Conditions

Any decision regarding a service member's fitness to serve in the Marine Corps is one committed to the discretion of the Secretary of the Navy, which means that this Court cannot determine, as Mr. Fuentes requests, that he is unfit to serve as a result of his low back strain and TMJ syndrome and therefore grant him disability retirement under 10 U.S.C. § 1201. *See Fisher*, 402 F.3d at 1177 ("When the question is one of physical or mental fitness for service in the military, courts are loath to interfere with decisions made by the President and his designated agents.").  "It is equally settled that responsibility for determining who is fit or unfit to serve in the armed forces is not a judicial province; and that courts cannot substitute their judgment for that of military departments when reasonable minds could reach different conclusions on the same evidence." *Heisig*, 719 F.2d at 1156; *see also Fisher*, 402 F.3d at 1177.

The "merits of a decision committed wholly to the discretion of the military are not subject to judicial review[.]" *Adkins*, 68 F.3d at 1323.  The "court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." *Fisher*, 402 F.3d at 1177.  But considering whether the Navy followed its procedures does not allow the Court to reach a different conclusion regarding what the record evidence shows when reasonable minds could reach different conclusions. *Heisig*, 719 F.2d at 1156.  And "[t]he field of medical diagnosis is perhaps a paradigm example of an area in which reasonable minds can differ." *Kirwin v. United States*, 23 Cl. Ct. 497, 505 (1991).  It is ultimately "not the province of this court to factually determine, *ab initio*, whether plaintiff was unfit for military service at the time of his release." *Dzialo v.*

17

*United States*, 5 Cl. Ct. 554, 561 (1984).  Yet that is precisely what Mr. Fuentes asks the Court to do—reweigh the evidence and determine that he was unfit for service as a result of his low back strain and TMJ syndrome.  Pl. MJAR at 35–37; *see also* Am. Compl. ¶¶ 130–135 (ECF No. 45).

B.     The BCNR's Remand Determination That No Condition Other Than His Left Knee Pain Rendered Mr. Fuentes Unfit for Duty is Supported by the Administrative Record and is in Accordance With Applicable Law

The BCNR properly concluded on remand that the record in this case does not support Mr. Fuentes's request to have his military records changed from medical separation with severance pay to medical retirement.  The BCNR thus properly concluded that there is no error or injustice in his record requiring correction.

In accordance with the Court's order, the Board reviewed all evidence already in the record and the new evidence submitted by Mr. Fuentes on remand in reaching its conclusion that "the Navy properly considered whether [his] diagnosed low back strain and TMJ separately or collectively impaired [his] ability to perform his military duties when it chose not to refer either condition to a medical board or the PEB."  AR2518.

First, the BCNR's conclusion that Mr. Fuentes's low back strain is not unfitting is supported by the record evidence, which demonstrates that, during Mr. Fuentes's numerous encounters with medical and other personnel, none of them ever identified any occupational impairment experienced by Mr. Fuentes due to his low back strain.  AR2516–2517.  Most telling for the BCNR was the fact that the February 8, 2019 medical examination, which was conducted the week after Mr. Fuentes was medically separated, documented no symptoms with his back at that time, nor any with his TMJ syndrome.  *Id.*; AR1769–1775.

In addition, the advisory opinion requested by the BCNR on remand found nothing in Mr. Fuentes's documented history of treatment to indicate that he had any occupational impairment

as a result of his low back strain, in contrast to the documentation reflecting his unfitness due to left knee pain.  AR1041–59.  Indeed, Mr. Fuentes had 45 encounters related to his left knee pain, many of which noted occupational limitations, and two resulted in prescribed periods of limited duty.  AR1043–45.  In contrast, he had only nine encounters that had any link to his low back strain, and none of those documented any occupational limitations or led to any limited duty.  AR1045–49.  The BCNR found this lack of contemporaneous evidence of occupational limitations for low back strain to be compelling evidence that Mr. Fuentes's condition was not unfitting.

Moreover, the BCNR explained why the contradictory conclusion of Dr. Slawski, which was submitted by Mr. Fuentes, did not outweigh the totality of the contemporaneous evidence that his low back strain was not unfitting.  AR2516; AR1049–51.  In short, Dr. Slawski's opinion that Mr. Fuentes's left knee pain and low back strain were inextricably linked was based on a physical therapist's report of another patient, not Mr. Fuentes, and thus the Board reasonably determined that Dr. Slawski's conclusion was inherently unreliable in assessing whether Mr. Fuentes was unfit for service.  AR1049–51.

Second, the BCNR's conclusion that Mr. Fuentes's TMJ syndrome (his jaw condition) was not unfitting is also amply supported by record evidence. AR2517.  There are no contemporaneous records showing that Mr. Fuentes's jaw condition led to any occupational limitations or limited duty. *Id.*; AR1053–55.  Indeed, after he recovered from his oral surgery complications, Mr. Fuentes sought no treatment the condition for three years.  AR1053.  And none of the records of the three dental examinations that Mr. Fuentes underwent in 2018 showed any occupational limitations or resulted in any duty limitations.  AR1053–55.  Nor were any

issues documented on February 8, 2019 during the medical evaluation that occurred one week after his separation.  AR2517; AR1769–75.

Finally, the BCNR reasonably found that Dr. Slwaski's opinion regarding Mr. Fuentes's TMJ syndrome was unreliable to rebut the totality of contemporaneous documentation, as Dr. Slawski's opinion was "theoretical, based on the projected trajectory of [Mr. Fuentes'] 2014 presentation . . . rather than the empirical findings documented by dental corps officers." AR2517; AR1055.  In sum, the BCNR reasonably concluded that the lack of contemporaneous records documenting any problems supported its determination that Mr. Fuentes was not unfit for continued service due to either his low back strain or his TMJ syndrome.  AR2518.

IV.  **Mr. Fuentes Has Failed to Show that the BCNR was Unreasonable in Concluding That He Did Not Qualify for Medical Retirement Because His Other Two Conditions Were Not Unfitting, Separately or in Combination with His Left Knee Pain for Which He was Found Unfit and Medically Separated**

Mr. Fuentes's challenges to the BCNR's conclusion that he was not unfit for service due to his low back strain or TMJ syndrome do not withstand scrutiny.  The crux of these challenges is that the BCNR reached the *wrong* conclusion by weighing contemporaneous evidence more heavily than the supplemental medical opinion Mr. Fuentes provided.  *See* Pl. MJAR at 28. While Mr. Fuentes contends that the BCNR failed to abide by the statute and consider the collective effect of all three of his conditions in deciding if he was unfit to serve, *see id.* at 25–32, the administrative record amply rebuts his contentions.  The BCNR's decision shows that the Board expressly considered whether his low back strain and TMJ syndrome separately or collectively rendered him unfit for service with his left knee pain, for which he was deemed unfit and medically separated.  AR2514-18; AR1041-59.  Contrary to Mr. Fuentes's desire, however, the BCNR did not conclude that these other conditions rendered him unfit, either individually or collectively.  Unsatisfied with that reasonable conclusion, Mr. Fuentes now asks this Court to

reach a different conclusion and the other two conditions unfitting and order the Navy to place

him in disability retirement.  But that this Court cannot do.

> A.   Mr. Fuentes Failed To Demonstrate That The BCNR Did Not Evaluate His Low
>       Back Strain Collectively To Determine If It Was Unfitting

First, Mr. Fuentes contends that the BCNR failed to comply with 10 U.S.C. § 1216a(b) in

reaching its decision that his low back strain was not unfitting because it did not discuss the

effect of this condition in combination with his unfitting left knee pain.  Pl. MJAR at 25–29.

That statute provides that the Secretary of a Military Department, in making a disability rating

determination, "shall take into account all medical conditions, whether individually or

collectively, that render the member unfit to perform the duties of the member's office, rank, or

rating."  10 U.S.C. ¶ 1216a(b).  Mr. Fuentes alleges that the BCNR decision failed to apply this

standard, claiming that the Board only considered his conditions separately.  Pl. MJAR at 25

("There is simply no discussion of Mr. Fuentes duties as a Marine and how they would be

impacted by the collective effect of his back, jaw, and knee injuries.  Instead, the BCNR

separately evaluated his back injury and his jaw injury, without even discussing their relationship

to his knee injury.").

In support of his contention that the BCNR did not consider his conditions collectively,

Mr. Fuentes asserts that the BCNR "disregarded evidence throughout the record" by not

crediting the medical opinion of Dr. Slawski that Mr. Fuentes submitted on remand as dispositive

on the question of whether his left knee pain and low back strain were connected and should

have been found collectively unfitting.  *Id.* at 25, 29.  Mr. Fuentes believes that the BCNR's

conclusion that only his left knee pain was unfitting is unreasonable because he alleges Dr.

Slawski's opinion should have been given more weight than the contemporaneous evidence in

the record cited by the BCNR.  *Id.* at 28 ("The Navy apparently believes that his left knee is the

21

exclusive reason for these limitations.  But that conclusion disregards record evidence to the contrary.  Mr. Fuentes submitted an expert opinion to the BCNR, showing that his left knee and spinal injury jointly contribute to his physical limitations.").

Mr. Fuentes is incorrect, however, when he claims that the BCNR did not consider the collective effect of his various injuries in its analysis, and he is wrong in asserting that the BCNR did not consider Dr. Slawski's opinion.  The BCNR's decision expressly refutes his contention. Indeed, the May 3, 2021 decision reflects that the BCNR reviewed the medical evidence, including the "conflicting medical opinions" presented by Mr. Fuentes.  AR2516.  That conflicting medical opinion was the report authored by Dr. Slawski.  AR1049-51 (considering AR1029–32).  And Dr. Slawski's opinion that Mr. Fuentes's low back strain and left knee pain were likely connected was addressed at length in the SECNAVCORB's advisory opinion. AR1049–51.  Mr. Fuentes is merely disappointed that the BCNR did not credit Dr. Slawski's opinion as dispositive, which the BCNR could not have done anyway since the advisory opinion explained that Dr. Slawski's opinion was undergirded by information that was ultimately determined not to be a record pertaining to Mr. Fuentes.  AR1050–51.  Accordingly, had the BCNR credited Dr. Slawski's medical opinion, that itself would have been error, as the report was based on medical records that did not pertain to Mr. Fuentes.

Moreover, Dr. Slawski's report was the only evidence in the record suggesting a possible link between Mr. Fuentes's unfitting left knee pain and his low back strain.  Once the BCNR determined that it was unreliable, the Board had no other evidence in support of the notion that these two conditions should be considered collectively.  See AR2516–17; AR1044–53.  Thus, the BCNR reasonably concluded that Mr. Fuentes's low back pain was not collectively unfitting.

B.      The BCNR Did Not Err in Determining That Plaintiff's Low Back Strain Was
        Not Separately Unfitting

Faced with the reality that his low back strain condition was not unfitting in combination

with his unfitting left knee pain, Mr. Fuentes secondarily attacks the BCNR's conclusion that his

low back strain was not separately unfitting.  Pl. MJAR at 27, 29–32.  On this issue, Mr. Fuentes

launches four specific attacks on the BCNR's conclusion, contending that the Court should

interpret the record evidence differently than the BCNR and thus supplant the BCNR's finding of

fitness with his suggested finding of unfitness.  *See id.*  But these challenges to the merits of the

BCNR's decision are beyond judicial cognizance and therefore must be dismissed for that reason

alone.  *See Fisher*, 402 F.3d at 1177 (explaining that determining who is fit or unfit to serve in

the armed forces is not a judicial province).  Regardless, Mr. Fuentes has failed to show that the

BCNR's decision on the merits is not supported by the record evidence in this case.

1.      The BCNR's Decision Is Not Unreasonable Simply Because Medical
        Evidence Could Be Interpreted To Support Different Conclusions

The BCNR's determination is not arbitrary or capricious merely because the possibility

exists that someone else could reach a different conclusion.  The field of medical diagnosis is a

paradigm example of an area where reasonable minds can differ, *see Kirwin*, 23 Cl. Ct. at 505,

and the review standard does not require a reweighing of the evidence but merely a

determination whether the conclusion being reviewed is supported by substantial evidence.  *See*

*Heisig*, 719 F.2d at 1157.  Thus, even where there is room for reasonable disagreement that does

not mean that a decision was arbitrary or capricious.  Yet Mr. Fuentes seeks to have the Court

find just that and then reweigh the evidence to reach his desired conclusion.  Demonstrating that

the record evidence could support a different conclusion, however, does not establish that the

BCNR's decision was unsupported by substantial evidence.  Ultimately, Mr. Fuentes has failed

23

to show that the conclusion that his low back strain was not unfitting is not supported by substantial evidence.

In this first attack, Mr. Fuentes asserts that his evaluation by Dr. Sussman in August 2017, where he was found to have a limited range of motion—and which the VA used in finding him 20 percent disabled under VA regulations—should have led to a conclusion that his low back strain is unfitting. Pl. MJAR at 27. But Mr. Fuentes cannot rely solely on a VA rating decision to establish that he meets the criteria for military disability benefits. *See Rutherford v. United States*, 573 F.2d 1224, 1227 (Ct. Cl. 1978). Moreover, the August 2017 report he relies upon, which was expressly considered by the BCNR, states that it would be "mere speculation" to conclude whether his limited range of motion would have led to any occupational limitation that could justify a finding of unfitness. AR1049. Thus, Dr. Sussman's report does not support a conclusion that Mr. Fuentes was unfit due to his low back strain.

2.      Mr. Fuentes' Is Incorrect in Claiming That The BCNR Did Not Consider The Entire Record

Second, Mr. Fuentes asserts, without any support, that the BCNR "did not consider the entire record in this case" because the BCNR only discussed his two physician evaluations. Pl. MJAR at 29. Mr. Fuentes notes that he "reported back pain to his medical providers more than a dozen times between 2017 and 2019." *Id.* This assertion, however, is wholly without merit, as the record shows that the BCNR considered the 22 medical encounters that Mr. Fuentes had for issues not directly related to his left knee pain (an issue for which he had 45 separate clinical encounters). AR1044–45. Of these 22 encounters, the BCNR identified nine that were associated with his low back strain—and of those nine, only two warranted physical evaluations, as Mr. Fuentes notes. AR1045–46. Most tellingly, though, neither of those two physical evaluations resulted in anything other than conservative treatment—"warm heat and stretches"

and "acetaminophen (Tylenol)." AR1046; AR2515. Accordingly, Mr. Fuentes's assertion is incorrect; in fact, the BCNR considered the entirety of the record on remand.

   3. Mr. Fuentes' Attempts to Cast Doubt on The February 8, 2019 Examination Report That Documented That He Had No Occupational Impairments Related to His Low Back Strain Are Without Support

  Mr. Fuentes's third attack fares little better than his previous two. Mr. Fuentes contends that the February 8, 2019 medical examination, conducted the week after he was medically separated from military service, was "badly misread" by the BCNR, and that this undercuts the BCNR's entire determination on remand. Pl. MJAR at 29–30. While Mr. Fuentes concedes that that this examination made no reference to his low back strain, he seeks to discount this reality by alleging, without basis, that the examination "intentionally excluded" all issues beyond his left knee pain. *Id.* at 30. This bald assertion of purported malfeasance finds no support in the record. Moreover, Mr. Fuentes bears the burden to overcome the strong, but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith. *See Sanders*, 594 F.2d at 813. To rebut this presumption, Mr. Fuentes must present cogent and clearly convincing evidence. *Cooper v. United States*, 203 Ct. Cl. 300, 304 (1973), 1973 WL 21358.

  Mr. Fuentes, however, can point to nothing in the record that shows that he complained about his low back strain during the February 8, 2019 examination, or that Dr. Harris intentionally excluded any such complaints from the exam report. In fact, the report itself refutes his assertion, noting that "the source of patient information was patient." AR1769. Thus, any history of conditions or problems in the report came directly from Mr. Fuentes. Indeed, under the heading "medical/surgical history," the report notes "renal failure. sepsis. air embolism." AR1770. These issues were unrelated to Mr. Fuentes's left knee pain for which he was

medically separated, as they are associated with his TMJ syndrome condition, but they were included in the report because Mr. Fuentes mentioned them during the examination.

Thus, the absence from the report of any complaint or information about his low back strain most likely reflects Mr. Fuentes's failure to mention it during the exam.  There is no merit to his bald contention that his low back strain was "intentionally excluded" from the examination notes.  Accordingly, the BCNR reasonably concluded that the lack of any complaint about low back strain during an examination in which Mr. Fuentes was the source of information about his condition was "telling evidence of whether an occupational impairment existed at the time of his discharge from the Marine Corps."  AR2516.

        4.     Mr. Fuentes Has Failed to Demonstrate That The Properly Referred Policy Had Any Impact on The BCNR's Decision

Further, there is no merit to Mr. Fuentes's related contention that complaints about his low back strain were "intentionally excluded" because the BCNR was "[i]n practical effect, [ ] re-applying the revoked Properly Referred Policy, because it was relying upon the absence of any discussion of back pain in a medical report that was intentionally and explicitly limited to the only issue (Mr. Fuentes' knee) listed in his MEB referral."  Pl. MJAR at 30.  This contention is baseless for the reasons discussed in the preceding paragraph, as well as because the record shows that Mr. Fuentes's case was re-reviewed on June 26, 2018, after the policy was rescinded but before the February 8, 2019 examination occurred.  AR1042 (letter from SECNAVCORB Director noting that, following rescinding of policy, Mr. Fuentes's case was "reviewed to determine whether the additional petitioned conditions are separately or collectively unfitting.").

Finally, Mr. Fuentes attacks the BCNR's conclusion that his low back strain was not unfitting because no one ever considered his symptoms serious enough to merit referral to a medical board or the PEB as another instance of the Properly Referred Policy being misapplied.

Pl. MJAR at 31.  This argument is a red herring, as Mr. Fuentes's case was reviewed to determine if his other conditions were unfitting after that policy was rescinded.  Thus, the BCNR was not unreasonable in concluding that the fact that no medical personnel in the 67 encounters reviewed by the Board ever found that Mr. Fuentes's low back strain caused him occupational limitations was telling evidence that his condition was not unfitting. AR2516; AR1044–45.

### C. The BCNR Did Not Err in Finding That Mr. Fuentes's TMJ Syndrome Was Not Separately or Collectively Unfitting

Mr. Fuentes has failed to demonstrate that the BCNR's decision that his TMJ syndrome was not separately or collectively unfitting was arbitrary or capricious.  Mr. Fuentes asserts that the BCNR "ignore[d] crucial evidence regarding [his] jaw injury," Pl. MJAR at 32, but the record does not bear this out.  Indeed, none of Mr. Fuentes's arguments withstand scrutiny.

Mr. Fuentes primarily argues that the BCNR ignored an August 13, 2018 dental examination record in its analysis, a record that he contends demonstrates that his TMJ syndrome rendered him unfit for continued service.  Pl. MJAR at 33–34.  But the record does not bear this out.  Instead, the record shows that the BNCR expressly considered this dental examination, in addition to his other dental exams, in determining that he was not unfit due to his TMJ syndrome.

Indeed, the advisory opinion that the BCNR relied upon expressly addressed the August 13, 2018 in reviewing the record evidence.  AR2517; AR1054–55.  The advisory opinion first noted that, on January 23, 2018, Mr. Fuentes underwent a dental exam that designated him as "Class 1" or "worldwide deployable." AR1054.  The advisory opinion then noted, however, that, during his August 13, 2018 dental exam, Mr. Fuentes reported pain in his jaw and was advised to manage this pain conservatively, with Ibuprofen, among other things.  AR1055.  Nevertheless, the advisory opinion also noted that, in a follow-up visit on November 8, 2018, Mr. Fuentes was

again noted to have no issues and was again rated "Class 1." AR1055.  Finally, the BCNR noted that there were no issues regarding his TMJ syndrome in the report accompanying his February 8, 2019 medical evaluation, which occurred the week after he was separated.  AR2517; AR1769–1775.  Based on the totality of this information, the BCNR determined that his TMJ syndrome condition was not unfitting.

But Mr. Fuentes disagrees with the BCNR's conclusion.  He contends that the August 13, 2018 dental exam should be given greater weight.  Pl. MJAR at 34.  Apparently recognizing that his first contention about the BCNR ignoring this August report is meritless, Mr. Fuentes then suggests, without support, that the November record the BCNR relies on "**_may not_** even be about Mr. Fuentes."  Pl. MJAR at 34 (emphasis in original).  This contention is wholly without merit.  In making this assertion, Mr. Fuentes refers to AR1390 as the record pertaining to this November 8, 2018 dental visit, and notes that there are no independent indicia on the face of the document that denote it pertains to Mr. Fuentes.  Pl. MJAR at 34.  But that is irrelevant, as AR1391 appears to be the page that the BCNR cited.  AR1391 is a dental record from November 8, 2018 that states on its face Mr. Fuentes's name and also notes that he is "Class 1."  Thus, Mr. Fuentes has failed to show that the BCNR's determination was unreasonable.

In sum, the BCNR considered the entire record and concluded that it did not support a finding that Mr. Fuentes was unfit due to his low back strain or TMJ syndrome.  AR2516–18.  The BCNR found that, even acknowledging that Mr. Fuentes "received multiple treatments for [his] back condition throughout [his] active duty service" and despite the "conflicting medical opinions" in the record, "the fact [that] none of [his] medical providers considered [his] symptoms serious enough to merit a referral to a medical board or the PEB [ ] was persuasive evidence to the Board that [his] symptoms did not cause serious enough occupational impairment

28

to be considered unfitting for continued naval service."  AR2516.  "Most importantly, the Board felt that [his] 8 February 2019 medical examination for employment purposes was telling evidence of whether an occupational impairment existed at the time of [his] discharge from the Marine Corps," as it was conducted one week after his discharge.  *Id.*  The BCNR concluded that, "despite evidence that [he] possessed defects in his spine, the Board did not find evidence that these defects were sufficiently symptomatic to cause an occupational impairment." AR2516–17.  And regarding Mr. Fuentes's contention that his back condition should have been referred under the "combined effect" policy, the Board noted that, "in order to qualify for a referral under the 'combined effect' policy, there must be some evidence of an occupational impairment," but concluded that his record demonstrated no occupational impairment.  AR2517.

Similarly, the BCNR concluded that the "preponderance of the evidence does not support a finding that [Mr. Fuentes's] TMJ condition was separately unfitting."  AR2517.  The Board found the January and November 2018 dental examinations "compelling as evidence that [his] TMJ condition did not create an occupational impairment."  *Id.*  Neither of those examinations resulted in any duty limitations, nor did the February 8, 2019 medical examination he underwent one week after his separation document any symptoms of his TMJ syndrome.  *Id.*  Further, concerning Mr. Fuentes's assertion of "combined effect," the Board again found the lack of any evidence of occupational impairment justified the Navy's decision not to refer his TMJ syndrome condition to a medical board or the PEB.  AR2517.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss Mr. Fuentes's case for failing to state a claim under RCFC 12(b)(6), or, in the alternative, grant the United States judgment upon the administrative record, and deny Plaintiff's motion for judgment under RCFC 52.1.

<div style="margin-left: 50%;">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

</div>

OF COUNSEL:                           s/Vincent D. Phillips, Jr.
Jahn C. Olson                         VINCENT D. PHILLIPS, JR.
Lieutenant Colonel, U.S. Marine Corps Senior Trial Counsel
General Litigation Division           Commercial Litigation Branch
Office of the Judge Advocate General  Civil Division
                                      P.O. Box 480
                                      Ben Franklin Station
                                      U.S. Department of Justice
                                      Washington, DC 20005
                                      Telephone: (202) 305-4591
                                      Facsimile:  (202) 514-8640
August 20, 2021                       Email: Vincent.Phillips2@usdoj.gov